UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD RANSOM, JR.,<br><br>    Plaintiff,<br><br>    vs.<br><br>R. MARQUEZ, et al.,<br><br>    Defendants. | 1:10-cv-00397-AWI-EPG-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT SANDOVAL'S MOTION FOR SUMMARY JUDGMENT BE GRANTED (ECF No. 110.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY DAYS |

**I.   BACKGROUND**

    Leonard Ransom, Jr. ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on March 8, 2010. (ECF No. 1.) This case now proceeds on the First Amended Complaint, filed on June 29, 2012, against defendants Correctional Officer (C/O) M. Amador, C/O Daniel Nava, C/O R. Marquez, and C/O Ralph Nunez for use of excessive force; and against defendants C/O Daniel Nava, C/O R. Marquez, Sergeant J. Ybarra, and Lieutenant Carlos Sandoval for failure to protect Plaintiff. (ECF No. 13.)

On July 31, 2015, Defendant Sandoval filed a motion for summary judgment.[1] (ECF No. 110.) On October 16, 2015, Plaintiff filed an opposition to the motion. (ECF No. 121.) On October 23, 2015, Defendant Sandoval filed a reply in support of his motion for summary judgment. (ECF No. 122.)

Defendant Sandoval's motion for summary judgment is now before the Court. Local Rule 230(*l*). For the reasons that follow, the Court recommends that Defendant Sandoval's motion be granted.

## II.   SUMMARY OF PLAINTIFF'S CLAIMS RELATED TO ALL DEFENDANTS[2]

During the time of the events at issue in the First Amended Complaint, Plaintiff was incarcerated at Kern Valley State Prison (KVSP) in Delano, California. Plaintiff's factual allegations follow.

The incident at issue in this lawsuit occurred on May 22, 2007, at KVSP. Plaintiff and his cellmate were released for their showers (the facility was on modified program) by C/O Gonzalez, the unit control booth officer. Plaintiff's cellmate entered the lower tier shower. While Plaintiff was waiting, he filled up containers with hot water in order to make coffee when he returned to his cell. Another inmate asked Plaintiff to get some hot water for him. Plaintiff did so, and took it to that inmate's cell. While standing at the cell door, Plaintiff asked C/O Gonzalez whether he could come out later. Gonzalez stated, "No! take your shower!" First Amended Complaint (FAC), Doc. 13 at 5 ¶4. Plaintiff told the other inmate that Gonzalez "got his idiot hat on today." Id. at ¶5. Gonzalez heard this comment over the intercom. Gonzalez then ordered Plaintiff to "lock it up, you don't get no shower!" Id. Plaintiff walked to his cell door and told Gonzalez to open his door. Gonzalez did not open the cell door. Gonzalez left the control booth, and told C/Os Ochoa and Gina Marquez, falsely, that Plaintiff refused to return to his cell.

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[2] The summarization of Plaintiff's claims in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

Ochoa and Gina Marquez entered the unit, approached Plaintiff, and ordered him to place his hands behind his back and "cuff up."  Id. ¶8.  Plaintiff refused to place his hands behind his back as "the restraints [were] applied in a manner likely to cause undue physical discomfort [or] restrict[ion] to my bloodflow, as I have an injured shoulder."  Id. ¶9.  Ochoa "attempted to deploy his pepper spray."  Id. ¶10.  Plaintiff protected himself from the pepper spray by putting his head down to avoid the pepper spray.  Plaintiff alleges that Ochoa "attacked" him, with both Plaintiff and Ochoa falling to the ground.  Id. at 6-7 ¶11.  Plaintiff alleges that while he was on the ground, "I buried my face in the space between Officer Ochoa's left shoulder and neck area, as Ochoa continued to reposition my face, while hitting me with his fists."  Id. ¶12.  Although Plaintiff indicates that he was not struck in the face, he does allege that he was struck in the back of the head by Officer Gina Marquez.

Plaintiff ran past Ochoa out into the building rotunda, and was pursued by Ochoa and Gina Marquez.  Once Plaintiff reached the C-section door, he turned around and lay prone.  Officer Gina Marquez handcuffed Plaintiff, "causing great pain and further injury to my left shoulder."  Id. ¶15.  Once Plaintiff was handcuffed, responding staff began arriving in the unit.  Responding staff included C/O R. Marquez, C/O Nava, C/O Nunez, C/O Amador, C/O Lomellie [not a defendant] and Sergeant Ybarra.

Plaintiff alleges, that while he was prone and handcuffed, he was "picked up, flipped heels over head, slammed back to the ground, arms bent (grotesquely) back (in a military stress position), by Officers Nava and Nunez, while Gina Marquez jumped up, in the air, and came down, with her knees to my lower back."  Id. ¶18.  While Plaintiff was being held down, C/O Nunez "stomped me on the backside, and the back of legs, ultimately scraping the skin off."  Id. ¶20.  Plaintiff alleges that Officer R. Marquez kicked him in the mouth, knocking a tooth out.  When R. Marquez stopped, C/O Amador began striking Plaintiff with a baton in the upper left shoulder and back area, leaving distinct baton markings and welts on his back.

Sgt. Ybarra ordered the officers to get Plaintiff up and escort him out of the building.  In response, Nava and Nunez "picked me up. . . and walked me (approx. 20'), at which time I was thrown to the ground, and again, kicked in the face, by R. Marquez (in full view of Sgt. Ybarra,

who had been there the entire time I was being beaten by his subordinates), at which time my lower lip was busted on the lower left side [and] Nava and/or Nunez started grinding my face on the cinder-block wall, which caused severe facial scraping, coupled with damage to my left shoulder, prior to being escorted out of the building." Id. at 7 ¶25.

      Plaintiff alleges that, as he was being escorted out of the building, Nava and Nunez lifted Plaintiff up by his handcuffs "in the military stress position," where Plaintiff "had to walk doubled over, and was escorted out of the building, while being punched, continuously, by M. Amador and R. Marquez." Id. ¶26. Plaintiff was moved to the Facility A upper yard basketball court, where Nava and Nunez "again threw me to the ground and again stomped on the back of my legs, and my feet, and [I was] kneed in the face, by Officer Nunez, as R. Marquez, Nava, Sgt. Ybarra, and now, Lt. Carlos Sandoval watched." Id. ¶27. C/O Nava ordered Plaintiff to stop resisting, although Plaintiff alleges that he was not resisting. Plaintiff was placed in leg shackles and a spit mask. Plaintiff alleges that the spit mask obstructed his breathing (Plaintiff is asthmatic). Plaintiff's clothes were cut off with a pair of scissors, leaving him in boxer shorts. Plaintiff alleges that in the process of doing so, he was "threatened with scissors at my genitals." Id. at 8 ¶32. Plaintiff does not allege that he was injured by the use of scissors.

      Plaintiff was taken to the Facility A medical clinic and placed in a holding cell. Plaintiff remained in the holding cell for three hours. Plaintiff also remained in leg shackles and was not allowed to decontaminate or rinse off the pepper spray that had been applied. After approximately thirty minutes, Plaintiff was examined. All of Plaintiff's clothing with the exception of his boxer shorts was removed. Plaintiff was then escorted to Administrative Segregation. Plaintiff alleges that the escort required him to walk approximately 175 yards along a gravel roadway, causing his feet to bleed.

      Plaintiff alleges that as a result of the use of force, he suffered "severe injuries," including the following: knocked out lower right tooth; lacerated lower left side of lip; contusion on the upper left back and shoulder area; shoulder bone injury; left and right knee injuries; severe abrasions; severe facial abrasions; burning from pepper spray; and ongoing physical and psychological trauma. Id. ¶36.

### III. SUMMARY OF DISPUTE RELATED TO DEFENDANT SANDOVAL

Only Defendant Sandoval has moved for summary judgment. According to Plaintiff's First Amended Complaint, Defendant Sandoval watched as Plaintiff was hit while on the ground. (First Amended Complaint ¶ 27.) Defendant Sandoval did not himself touch Plaintiff or use any type of force against Plaintiff. Plaintiff alleges nevertheless that Defendant Sandoval failed to intervene to protect Plaintiff against the other Defendants' use of excessive force.

In its July 19, 2012 order, this Court held that Plaintiffs complaint stated a cause of action agaisnt Defendant Sandoval for failure to protect Plaintiff in violation of the Eighth Amendment. (ECF No. 14.)

Defendant Sandoval now moves this Court to dismiss the claims against him because (1) Defendant Sandoval did not have an opportunity to intervene because he was too far from the incident; and (2) Defendant Sandoval is entitled to qualified immunity because a reasonable officer would have believed that Defendant's actions in not intervening in the dispute were lawful.

### IV. SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## V. UNDISPUTED FACTS RELEVANT TO THIS MOTION

Although there are many facts in dispute related to the details of Defendant Sandoval's roles and responsibilities, it appears that the basic facts about where Defendant Sandoval was standing and his lack of interaction are undisputed.

According to Plaintiff's deposition, Defendant Sandoval was "maybe 30 yards, 25 yards" away when he saw the other Defendants using force on Plaintiff. (Plaintiff's Deposition, 108:5-13) Both parties also agree that "The program office, where Sandoval's office is located on the 'patio' across from the facility A and B housing buildings, and 'the patio is separated from the yard by a fenced gate." (ECF No. 121, p. 3) Plaintiff also does not dispute that at the time of the incident, Defendant Sandoval was on the other side of the fence.

(ECF No. 121, p. 5 (note that Plaintiff disputes the accuracy of the measurements set forth in the related purported fact, but not the fact that Defendant Sandoval was on the other side of a fence)). Plaintiff also states that he did not see Defendant Sandoval until Plaintiff was already on the ground. (Plaintiff's Deposition, 108:24-109:11) Plaintiff claims that Defendant Sandoval should have "told them to stop." (Plaintiff's Deposition, 109:20-24).

## VI. FAILURE TO INTERCEDE

### A. Legal Standards

"[O]fficers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *United States v. Koon,* 34 F.3d 1416, 1447 n. 25 (9th Cir. 1994), *rev'd on other grounds,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." Cunningham v. Gates, 229 F.3d 1271, 1289-90 (9th Cir. 2000), as amended (Oct. 31, 2000) (holding that non-shooting and non-present officers cannot be held liable for failing to intercede to prevent shooting). *Compare* Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) (denying summary judgment as to bystander officers because "In none of the affidavits submitted with the officers' motion for summary judgment do any of the officers state they did not have the opportunity to intervene to prevent Officer Meecham from firing the gun. On the other hand, the affidavits of the officers and Robins indicate that all three officers were together in the control bubble").

### B. Application of Law to Undisputed Facts

Here the undisputed facts demonstrate that Officer Sandoval was not in a position to intervene to stop the use of force, even if that force were unconstitutionally excessive. Officer Sandoval did not see the incident until Plaintiff was already on the ground, was approximately 25-30 yards away, and was on the other side of a fence. Under these undisputed facts, Plaintiff has not met his burden to show that a triable question of fact remains regarding Defendant Sandoval's opportunity to prevent the Constitutional violation.

In Plaintiff's opposition, Plaintiff argues that Defendant Sandoval's submission of records describing the events were false. While the Court agrees that there are disputed

questions of fact regarding the veracity of reports done after the time about that incident, that dispute of fact does not concern Defendant Sandoval's opportunity to intervene.  The only pending claim against Defendant Sandoval is a failure to protect Plaintiff from harm.  Notably, the Court dismissed Plaintiff's claims related to the discplinary proceedings, which resulted from Defendant Sandoval and other Defendants' reports.  (ECF. No. 14).  Thus, disputes regarding whether Defendant Sandoval falsified reports do not create a question of fact regarding his ability to intervene to prevent the alleged excessive force.

## VII.    QUALIFIED IMMUNITY

### A.    Legal Standards for Qualified Immunity

Defendant Sandoval also argues that he is entitled to qualified immunity for his actions. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.

In determining whether an officer is entitled to qualified immunity, the court must decide (1) whether facts alleged or shown by plaintiff make out a violation of constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.  Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236.  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

### B.    Application of Law to Undisputed Facts

Because the Court finds that Defendant Sandoval did not have a constitutional duty to

act because he was not in a position to intervene in the use of force, qualified immunity is not an issue. Nevertheless, the Court believes that Defendant Sandoval would be entitled to qualified immunity for his actions.

The above listed undisputed facts regarding Defendant Sandoval's location are relevant to the qualified immunity analysis as well, and the Court incorporates them by reference. Additionally, it is undisputed that, prior to the use of force by other defendants, Defendant Sandoval heard an alarm whose purpose was to alert staff of a prison incident and summon additional staff to assist an officer in need. (ECF No. 121, p. 2)  While Plaintiff disputes that Plaintiff actually assaulted two officers prior to that alarm, it is undisputed that Defendant Sandoval heard the alarm, which is used in situations where a prisoner has assaulted an officer. Moreover, it is undisputed that the defendants who were using force against Plaintiff at the time were ordering Plaintiff to "quit resisting." (ECF. 121, p. 4)  While the Court understands Plaintiff's argument that correctional officers say this when using excessive force to fabricate a defense, it is nonetheless undisputed that Defendant Sandoval would have heard this, to the extent he was close enough to hear anything at all.

Thus, the undisputed facts show that Defendant Sandoval heard an alarm used in situations of a prisoner assault on an officer, would have heard the officers accusing Plaintiff of resisting, and was approximately 25-30 yards away behind a fence when the use of force occurred. Under the circumstances, it is not sufficiently clear that the Defendants who used force were committing a constitutional violation, nor that Defendant Sandoval had a constitutional obligation to intervene, even assuming he could have done so. Because a reasonable officer in Defendant Sandoval's position could have believed his actions, i.e. not intervening to stop the other Defendant officers from using force on plaintiff, were lawful, Defendants Sandoval is entitled to qualified immunity.

## VIII. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court finds no genuine issue of material fact remaining for trial as to Defendant Sandoval's liability for a failure to protect under the Eighth Amendment as well as Defendant Sandoval's entitlement to qualified immunity, and the motion for

summary judgment filed by Defendant Sandoval should be granted.  Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant Sandoval's motion for summary judgment, filed on July 31, 2015, be GRANTED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within twenty (20) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **December 2, 2015**                    /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE